## State of Connecticut v. Bernard Baldwin
### (3881)

Hull, Spallone and Bieluch, Js.

Argued April 4—decision released May 20, 1986

*Neil A. Lieberthal,* with whom, on the brief, were *John R. Gulash, Jr.,* and *Charles W. Fleischmann,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* assistant state's attorney, for the appellee (state).

Spallone, J. The defendant is appealing from the judgment rendered after his conviction by a jury of the crime of possession of cocaine, General Statutes (Rev.

to 1981) § 19-481 (a), possession of marihuana, General Statutes (Rev. to 1981) § 19-481 (c), and possession of drug paraphernalia, General Statutes (Rev. to 1981) § 19-480 (c).[1]

The defendant claims that the trial court erred (1) in denying his motions for judgment of acquittal and to set aside the verdict, since the state failed to produce sufficient evidence to establish guilt beyond a reasonable doubt, (2) in its instructions to the jury regarding the defendant's failure to testify, and (3) in its instructions to the jury on intent.

The jury could reasonably have found the following facts. Four members of the Bridgeport police special services, a division assigned to investigate narcotics cases as well as those involving gambling, morals and liquor violations, executed a search, pursuant to a warrant, of apartment 703, 120 Huntington Turnpike, Bridgeport. The apartment consisted of a combination living-dining room, one bathroom, two bedrooms, a hallway and a kitchen. The object of the warrant was to search for and seize narcotics, narcotics paraphernalia and items used in the packaging and distribution of narcotics. At the time of the search, the tenants were not present. In one of the bedrooms, an officer found three plastic straws, cut at angles, containing a white powder residue and two manila envelopes containing a plant-like material which was field tested positive as marihuana. Also found in this bedroom were men's shoes, shirts, dungarees, cologne, after shave lotion and belts.

Another officer found men's apparel, a folded ten dollar bill, two folded one dollar bills and a film canister, all of which contained a white powder substance which

[1] General Statutes (Rev. to 1981) §§ 19-481 (a) and 19-481 (c) are now §§ 21a-279 (a) and 21a-279 (c) respectively. General Statutes (Rev. to 1981) § 19-480 (c) is now § 21a-277 (c).

later proved to be cocaine, in the second bedroom. This bedroom contained clothing and pictures of the defendant.

A third officer found and seized numerous items used in the drug trade in the dining area and kitchen including plastic baggies with plant material, manila envelopes, glassine envelopes, a plastic spoon, a triple beam scale, mixing compound, pieces of granite, playing cards, small bottles, strainers, and two pairs of scissors. The plastic spoon, scales, playing cards, small bottles, strainers and the scissors all contained a white powder residue.

On the basis of the evidence seized, the officers applied for and obtained an arrest warrant for the defendant. The defendant was tried on a substitute information charging him with one count of possession with intent to sell cocaine, one count of possession with intent to sell marihuana and one count of possession of drug paraphernalia. He was convicted of the lesser included charges of possession of cocaine, possession of marihuana and the original charge of possession of drug paraphernalia.

The defendant's first claim of error, that there was insufficient evidence to support his conviction, is based on his assertion that the state failed to prove, beyond a reasonable doubt, that the defendant was living in the apartment from which the items were seized at the time of the search, and that he was the possessor of those items. At the conclusion of the state's case, the defendant moved for a judgment of acquittal and upon the acceptance of the verdict, the defendant moved to set aside the verdict. The court denied both motions. The underlying basis of both motions was the defendant's allegation that the evidence produced by the state was insufficient to prove the charges beyond a reasonable doubt.

If we assume that the defendant was chargeable with the possession of the items seized, there is no question that the drugs and drug paraphernalia found in the apartment were sufficient evidence to support the guilty verdict. The central question then is whether the defendant was living in the apartment where the items were seized, and was chargeable with the possession of the items. The evidence produced at the trial was contradictory in that there was testimony to sustain a conclusion that the defendant was or was not a resident, depending on whom the jury believed. There was also conflicting evidence as to whether the defendant or someone else was a possessor of the drugs and drug paraphernalia. The resolution of such conflicts in the evidence, whether testimonial or physical evidence is involved, is the classic function of the jury. It is within the province of the jury to determine the credibility and the effect to be given the testimony. *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979); *Eagar* v. *Barron,* 2 Conn. App. 468, 471, 480 A.2d 576 (1984).

Furthermore, "[i]n reviewing a sufficiency of the evidence claim, ' "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *State* v. *Amarillo,* 198 Conn. 285, 289, 503 A.2d 146 (1986), quoting *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983); *State* v. *Morrill,* 197 Conn. 507, 512, 498 A.2d 76 (1985). The issue to be determined is whether the jury could reasonably have concluded, upon the established facts and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Findlay,* 198 Conn. 328, 333, 502 A.2d 921 (1986); *State* v. *Fernandez,* 198 Conn. 1, 21, 501 A.2d 1195 (1985); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 668, 500 A.2d

1324 (1985). The evidence must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Fernandez,* supra, 22. The verdict must stand unless it is against the evidence or its manifest injustice is so plain as to justify the belief that the jury or some of its members were influenced by ignorance, prejudice, corruption or partiality. *Martino* v. *Palladino,* 143 Conn. 547, 548, 123 A.2d 872 (1956); see *Carfora* v. *Globe, Inc.,* 5 Conn. App. 526, 529, 500 A.2d 958 (1985). Under the circumstances presented here, we will not disturb the jury's verdict.

The defendant's claim that his motions for judgment of acquittal and to set aside the verdict should have been granted is baseless. In reviewing the court's action on motions of this nature, because of the court's familiarity with the facts, the ruling of the trial court is entitled to great weight. *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982); see Holden & Daly, Connecticut Evidence (1983 Sup.) § 35. The dispositive question is whether the trial court clearly abused its discretion in denying the motions. *Labatt* v. *Grunewald,* 182 Conn. 236, 240, 438 A.2d 85 (1980). In determining whether the trial court abused its discretion, the only issue is whether the jury could reasonably and logically conclude as it did. If so, the court's refusal to set aside the verdict will be sustained. *Labatt* v. *Grunewald,* supra, 240–41. We conclude that the jury reasonably and logically could have reached the conclusion it did, and that the court did not abuse its discretion in denying the defendant's motions.

The defendant's second and third claims of error, although not raised in the trial court, are, as is conceded by the state, subject to our review because they involve the defendant's fundamental constitutional right to a fair trial. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

The defendant's second claim challenges the court's charge to the jury that no unfavorable inference could be drawn from the defendant's failure to testify. The parties agree that the court properly charged the jury on unfavorable inferences in accordance with General Statutes § 54-84 (b). The court expressly charged the jurors as follows: "And I am sure as you are no doubt aware, under our law in a criminal case, the person on trial for an offense for which he has been charged, has the option to testify or not testify on his own behalf. In this case, the accused has elected not to testify. It is my duty to tell you that you may not draw any unfavorable inferences as to his guilt merely because of his failure or refusal to testify." There is no question that this language represents a proper charge under the statute.

Later in the charge, the court, while giving the jury a lengthy instruction on intent, discussed the propriety of the jury drawing inferences on the basis of the evidence. During its analysis of the circumstances under which it would be proper for the jury to draw inferences of intent, the court reiterated its admonishment that no adverse inference be drawn from the defendant's silence. The trial judge stated: "You may not draw any unfavorable inference from the accused's failure to testify." The judge then stated: "To draw such an inference is not only the privilege of the jury, but is also your duty, provided that the inference drawn is a reasonable one."

A fair reading of the charge leads to the reasonable conclusion that the last sentence refers back to the intent charge and not to the immediately preceding sentence relating to the defendant's silence. The court's reference to the defendant's failure to testify was made to emphasize the fact that, although the jury had the privilege and duty to draw inferences as to intent, it was precluded from using the defendant's silence as

a basis for such an inference. Reading the charge as a whole and not as a series of isolated phrases, clarifies what, out of context, appears to be an anomaly. For a determination of whether the jury was misled, a charge must be read as a whole and detached clauses are not to be considered by themselves but in connection with the whole. *State* v. *Rodgers,* 198 Conn. 53, 58, 502 A.2d 360 (1985); *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). Charges to the jury are given orally by the court. When we review a bare written transcript, we are not privy to the nuances, pauses and accents in the delivery, if any, that might be apparent when listening to the charge. For this reason, we should not dissect the charge but should view it as an integrated whole. Our analysis of the court's charge fails to indicate that the court erred when instructing the jury regarding the defendant's failure to testify.

The defendant's final claim of error challenges the court's charge as to intent, contending that the instruction violated the proscription, enunciated in *Sandstrom* v. *Montana,* 442 U.S. 510, 513, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), against the use of language such as "every person is presumed to intend the natural consequences of his or her act." The court in this case used that phrase. The rationale militating against such usage is based on the risk that the jury may interpret the language as either creating a burden shifting presumption or a conclusive presumption that because the defendant committed the act, he must have intended the result. This situation would then require the defendant to disprove that he intended the result. Either concept violates the defendant's due process rights. The shifting of the burden of proof on an essential element of the crime, such as intent, denies the defendant the dual protections of the presumption of innocence and due pro-

cess of law. *State* v. *Harrison,* 178 Conn. 689, 693, 425 A.2d 111 (1979). The use of the word "presumes" does not, however, necessarily render the charge invalid. Our Supreme Court has held that the " 'lack of qualifying instructions as to the legal effect of the presumption' " is the factor that subjects the charge to error. *State* v. *Arroyo,* 180 Conn. 171, 175, 429 A.2d 457 (1980), quoting *Sandstrom* v. *Montana,* supra, 517.

A fair reading of the entire charge in this case reveals the presence of other language, the natural import of which qualifies the proscribed *Sandstrom* language. The court used such terminology as: "[Intent] may be *inferred,* but you may *not presume* the existence of the intent in the mind of an accused. . . . What a person's purpose or intention has been is necessarily very largely a matter of *inference.* . . . The only way in which a jury can determine what a person's purpose or intention was at any given moment, is by determining what the circumstances were surrounding that conduct, and from those, *infer* what the person's purpose or intention was. . . . In this case, therefore, it would be part of your duty to draw all reasonable *inferences* from the conduct of an accused in the light of the surrounding circumstances . . . ." (Emphasis added.) Such language qualifies and fairly apprises the jury that the acts of the defendant may be a factor to be considered when drawing inferences from the defendant's conduct.

We hold that the language used in the charge in this case is similar to the language used in cases in which our Supreme Court found no error despite the fact that the charge also contained the phrase invalidated in *Sandstrom.* Our Supreme Court has held that where the challenged instructions contain other language, not present in *Sandstrom,* which is sufficiently precise to rectify the improper instruction and which prevents the jury from applying the instruction in an unconstitutional manner, it will not find error. *State* v. *Amarillo,*

supra, 303; *State* v. *Asherman,* 193 Conn. 695, 734, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Vitale,* 190 Conn. 219, 221 n.1, 460 A.2d 961 (1983). In this case, the complete instruction on intent adequately delineated the state's burden of proof as to this element of the crime, and the otherwise improper use of the word "presume," taken in the context of the entire charge, has been sufficiently qualified and rectified to prevent the unconstitutional application by the jury of the questioned statement in the instruction.

There is no error.

In this opinion the other judges concurred.