STATE OF CONNECTICUT *v.* EUGENE O. FOOTE, JR.
(AC 30362)

Bishop, Gruendel and Schaller, Js.

Argued March 16—officially released June 29, 2010

*Jodi Zils Gagne*, special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *John A. Connelly*, state's attorney, and, on the brief, *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Eugene O. Foote, Jr., appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes (Rev. to 2007) § 53a-101 (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). He claims that (1) the trial court abused its discretion in denying his motion to suppress evidence of his pretrial identification and (2) the evidence adduced at trial was insufficient to sustain his conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 6 o'clock in the morning of July 2, 2007, Glorimary Guerra heard a knock on her door at 45 Long Hill Road in Waterbury. Expecting her boyfriend, she opened the door to instead find the defendant there. When he inquired if anyone was hiding inside the apartment, Guerra responded in the negative. As she began to close the door, the defendant pushed her back into the apartment and entered. The defendant then brandished a black-handled knife and proceeded through each room of the apartment with Guerra. As this transpired, the defendant repeatedly insisted that Guerra was hiding someone, and Guerra attempted to convince him otherwise. Because she was unsure of

his intent, Guerra constantly looked at the defendant's face. When they entered the kitchen, the defendant proceeded to the back door, at which point Guerra attempted to flee to the front door of the apartment. That effort proved unsuccessful, as the defendant ran after her and closed the door. Fearful, Guerra sat down and began to cry. The defendant then attempted to calm Guerra. As she testified at trial: "[H]e was just telling me . . . that he's just looking for the person, that he wants me to tell him who the person is, and I'm telling him I don't know where the person is. He's telling me to calm down, that he's not going to hurt [me]. But I don't know how he wants me to calm down because he's already in my house with the knife out, I'm pregnant, I'm seven and a half months pregnant, and I'm just scared, I don't know what to do . . . ." The defendant gave Guerra $3 and exited the apartment, at which point Guerra called 911 to report the incident.

Officers Steven Lanese and Brian DeStefano of the Waterbury police department arrived minutes later. Guerra described her assailant as a black male, slightly taller than Lanese, who wore a white shirt and black jeans and had a chubby face with facial hair. She further described the knife as one with a silver blade and black handle. After spending five minutes at the apartment with Guerra, the officers left to search for the perpetrator. Approximately thirty to forty-five seconds later, they encountered the defendant on East Farms Street and detained him, as he matched the description provided by Guerra. During that detention, the defendant acknowledged that he had a knife in his possession, which also matched Guerra's description. The officers placed the defendant in the rear of the police car and summoned Officers Renauto Crea and Jay Costanzo to bring Guerra to their location for possible identification. While transporting Guerra, Crea read her an advisement from a prepared police form titled "witness instructions

for one-on-one identification." The instructions indicated that she was being "asked to view a person"; that "[t]he person you will view may or may not be the person involved in this incident"; that "[i]t is as important for the police to clear innocent people as it is to identify the guilty"; and that "[t]he police will continue to investigate this incident, whether or not you identify someone."[1] Minutes later, the defendant was asked to exit the police car, and Guerra immediately identified him as the perpetrator. She further identified the knife found in his possession as the one brandished in her apartment. As a result, the officers placed the defendant under arrest.

The defendant thereafter was charged by long form information with burglary in the first degree in violation of General Statutes (Rev. to 2007) § 53a-101 (a) (1) and unlawful restraint in the first degree in violation of § 53a-95 (a). On March 4, 2008, the defendant moved to suppress all evidence of his pretrial identification "as well as any in-court identification of the [d]efendant . . . ." Following a hearing thereon, the court denied the motion. A trial followed, at the conclusion of which the jury found the defendant guilty on both counts. The court rendered judgment accordingly and sentenced the defendant to a total effective term of twenty years incarceration. This appeal followed.

## I

The defendant claims that the court abused its discretion in denying his motion to suppress evidence of his pretrial identification. He maintains that the one-on-one identification was both unnecessarily suggestive and unreliable in violation of his state and federal constitutional rights to due process and a fair trial.[2] We disagree.

---

[1] Guerra signed that instruction form following her identification of the defendant, initialing each of the four specified instructions.

[2] Our Supreme Court explicitly has held that article first, § 8, of the state constitution provides no greater protection than its federal counterpart in

"[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . . Furthermore, [w]e will reverse the trial court's ruling [on evidence] only where there is an abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Citation omitted; internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 547–48, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

In accordance with those principles, we begin our analysis by inquiring whether the identification procedure was unnecessarily suggestive. "[A] claim of an

the realm of identification procedures. *State* v. *Ledbetter*, 275 Conn. 534, 568, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

unnecessarily suggestive pretrial identification procedure is a mixed question of law and fact." *State* v. *Marquez*, 291 Conn. 122, 137, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009).

In concluding that the identification procedure was not unnecessarily suggestive, the court, in its oral decision, found as follows: "Based upon the testimony presented [at the suppression hearing], I find the following facts. That on July 2, 2007, [Guerra] answered a knock on her door sometime before 6 a.m. That a black male she did not know was at the door when she opened it. That she partly opened the door. His face was two feet away from her face at the door. That she got a good look at his face. That he pushed his way into the house and at some point took out a knife when she indicated that she wanted him to leave. That he indicated he was looking for someone. She denied that person was in her apartment. That he then proceeded to march her around the apartment with his knife out. She being in front of him and he being behind her, and then he proceeded to check every room in the house looking for this individual. That he subsequently left. That, according to her testimony, he was in her house approximately ten or fifteen minutes. That she had conversations with him. And that during those conversations she was looking at his face. That she waited five minutes after he left and went upstairs to a neighbor's apartment and called 911. . . . [S]he called 911 at 6:02 a.m. [and] at 6:07 [a.m.] two patrol officers arrived at her apartment. She told them what happened. She gave a description both in the 911 call and to the officers . . . that it was a black male, approximately five foot, nine, five foot, ten [inches tall], chubby face, white shirt, black pants, little hair on his head and some facial hair. That the police officers immediately went to their patrol car, searched the neighborhood to see if they could find

this black male at a short distance away from the victim's apartment.

"[The officers] found the defendant . . . walking on East Farms Street. He matched the description given by . . . Guerra. They investigated, detained him. She also indicated to the police officers . . . that she described the knife. That it was a black-handled knife with a silver blade, and it was folded. That [the defendant], when he was detained, indicated he had a knife. The officers . . . retrieved the knife, and it matched the description given to them by . . . Guerra. They called for backup. Second patrol car arrived. First patrol car on East Farms Road then went to . . . Guerra's apartment and brought her back for a one-on-one identification. She remained in the second patrol car. [The defendant] was then asked to exit the first patrol car, which he did. He was standing next to the two officers. Exited the patrol car with his hands behind him. . . . Guerra then identified him as the person who invaded her apartment. He was about twenty, twenty-five feet away from where she was sitting. She got a good look at his face, and she identified him without hesitation. Prior to the one-on-one identification, she had been informed by a patrol officer on the way to East Farms Road that the suspect that she was about to identify may or may not—that the individual that she was about to identify may or may not be the suspect. That the entire time from when the incident occurred at . . . Guerra's apartment, to the one-on-one identification was approximately thirty-five to forty minutes, according to the testimony. The incident occurred sometime before 6 a.m., and the one-on-one identification occurred at approximately 6:35 a.m.

"That while . . . Guerra was in her apartment with the intruder, while there were no lights on, there was light outside. She had no blinds drawn. That the intruder had nothing covering his face. That he was entirely

visible to . . . Guerra while he was in the apartment. That during the one-on-one identification, it was a clear day. It was not dark. It was light.

"Based on those facts, the issues before me are two-fold. First, the defendant has the obligation to establish that the identification was unnecessarily suggestive. If it was, the defendant must then establish that the identification was not otherwise reliable based on the totality of the circumstances. With respect to the first prong, that test, if clear it's that a one-on-one identification, is inherently suggestive, standing out in front of a police car with two police officers next to you, certainly suggests that this is the intruder. There is no question about that. But the issue is whether exigencies necessitate that such a suggestive procedure be used. And the court has established a number of factors that I'm to look at in determining whether an exigency existed. Those factors are whether the defendant was in custody. The availability of the victim. The practicality of alternate procedures. The need for the police to determine quickly if they are on the wrong trail. And whether the identification procedure provided the victim with an opportunity to identify his or her assailant while the memory of the incident was still fresh.

"Those last two factors in this case are substantial. The police clearly had a strong and substantial need to act quickly here. They had been informed that a person armed with a knife had invaded someone's apartment. That that person was looking for someone. That that person was not at the apartment that he first invaded. And so there was a strong likelihood that he would be going into somebody else's apartment, looking for that individual. And that he was armed with a knife. With respect to the acting while the memory was still fresh, this one-on-one identification happened approximately thirty-five to forty minutes after the incident. It's a very short period of time. And it certainly provided . . .

Guerra with an opportunity to determine whether this, in fact, this person that was being detained was, in fact, the intruder.

"With respect to the other factors, I find that [the defendant] had not yet been arrested. He had been detained for investigative purposes. That while certainly the police might have been able to ask [the defendant] whether he was willing to go to the police station to have a photographic array done, it seems to me, and I think the evidence reflects, that this one-on-one identification was a much quicker way for the police to determine they had the right guy or whether they should be looking for someone else or something unfortunate happens to someone else. So, I do not find that this one-on-one identification was unnecessarily suggestive. I find that there was an exigency that existed and that the one-on-one identification was appropriate under the circumstances."

On appeal, the defendant challenges the court's determination that the identification was not impermissibly suggestive. The defendant claims that the one-on-one identification was unnecessary, arguing that the officers easily could have brought him to police headquarters or later prepared a photographic array. In response, the state contends that this case presents a classic example of exigency that justified the prompt one-on-one identification. We agree with the state.

As our Supreme Court has observed, "almost any one-to-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively suggestive . . . because it conveys the message to the victim that the police believe the suspect is guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Wooten*, 227 Conn. 677, 686, 631 A.2d 271 (1993). At the same time, "[i]t has been held repeatedly . . . that one man confrontations do not per se

constitute a denial of due process of law." (Internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 272, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004). "Prompt on-the-scene confrontations tend under some circumstances to ensure accurate identifications and the benefit of promptness not only aids reliability but permits a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation . . . ." *State* v. *Sims*, 12 Conn. App. 239, 242, 530 A.2d 1069, cert. denied, 206 Conn. 801, 535 A.2d 1315 (1987). As a result, "[a]n immediate viewing of the suspect may be justified where it [is] important for the police to separate the prime suspect gold from the suspicious glitter, so as to enable them . . . to continue their investigation with a minimum of delay." (Internal quotation marks omitted.) *State* v. *Wooten*, supra, 686–87.

Our Supreme Court has recognized that "the existence of exigencies may preclude such a procedure" from being impermissibly suggestive. *State* v. *Ledbetter*, supra, 275 Conn. 549. "[W]hen we have been faced with the question of whether an exigency existed, [the court has] considered such factors as whether the defendant was in custody, the availability of the victim, the practicality of alternate procedures and the need of police to determine quickly if they are on the wrong trail," as well as "whether the identification procedure provided the victim with an opportunity to identify his assailant while his memory of the incident was still fresh." (Internal quotation marks omitted.) Id.

For example, in *State* v. *Wooten*, supra, 227 Conn. 677, our Supreme Court held that, although suggestive, the "one-to-one show-up or confrontation" on the scene between the victim and the defendant "was nonetheless not *unnecessarily* [suggestive] because the exigencies of the situation justified the procedure . . . . The confrontation was not unnecessary because it was prudent

for the police to provide the victim with the opportunity to identify her assailant while her memory of the incident was still fresh . . . and because it was necessary to allow the police to eliminate quickly any innocent parties so as to continue the investigation with a minimum of delay, if the victim excluded the defendant as a suspect or was unable to identify him." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 686. The court reached a similar conclusion in *State* v. *Ledbetter*, supra, 275 Conn. 550–53, *State* v. *Austin*, 244 Conn. 226, 248, 710 A.2d 732 (1998), and *State* v. *Amarillo*, 198 Conn. 285, 292–93, 503 A.2d 146 (1986).

A consideration of the entire identification procedure in light of the factual circumstances of the case persuades us that the identification procedure, although suggestive, was not unnecessarily so. See *State* v. *Marquez*, supra, 291 Conn. 146.[3] When they responded to

[3] Despite the fact that *State* v. *Marquez*, supra, 291 Conn. 122, was decided prior to the filing of their appellate briefs, neither the defendant nor the state has addressed the applicability of *Marquez* to the present case. In that recent decision, our Supreme Court revisited the unnecessarily suggestive standard in the context of photographic identification procedures. The court noted "two factors that courts have considered in analyzing *photographic identification procedures* for improper suggestiveness. The first factor concerns the composition of the photographic array itself. . . . The second factor, which is related to the first but conceptually broader, requires the court to examine the actions of law enforcement personnel to determine whether the witness' attention was directed to a suspect because of police conduct." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 142–43. Noting that "this continues to be an issue particularly ill suited to generic, bright line rules"; id., 156; the court stated that "a determination as to whether a particular identification procedure is 'unnecessarily suggestive' must focus on the foregoing factors"; id., 144; and further held that "it is the *entire* procedure, viewed in light of the factual circumstances of the individual case, that must be examined to determine if a particular identification is tainted by unnecessary suggestiveness." (Emphasis in original.) Id., 146.

That decision was silent as to the applicability of the aforementioned factors in the context of nonphotographic identification procedures. Plainly, the first factor set forth in *Marquez* is largely impertinent to one-on-one show-up identifications, as no photographic array is involved. As such, it

the 911 call, Guerra provided the officers a detailed description of her knife-wielding assailant. The officers encountered the defendant, who matched that description, less than one minute after departing Guerra's residence, and he had a knife in his possession that also matched Guerra's description. The officers sought a prompt identification from Guerra, while her memory was fresh, to ensure that the defendant was, in fact, the perpetrator. Such prompt identification served to "eliminate quickly any innocent parties so as to continue the investigation with a minimum of delay." *State* v. *Amarillo*, supra, 198 Conn. 293. In addition, such prompt identification served to prevent a similar attack on others. See *State* v. *Ledbetter*, supra, 275 Conn. 550 (at time of identification, police had received three separate telephone calls reporting robberies in general vicinity of detention and "some possibility existed that [the perpetrators] remained active in the area"). Given Guerra's report of a knife-wielding assailant on the hunt for an individual in her community, the facts of the case presented a quintessential example of exigent circumstances. Furthermore, the defendant at the time of the identification was not under arrest. Id.; *State* v.

is unclear whether the clarification of the unnecessarily suggestive standard articulated in *Marquez* governs one-on-one show-up identifications. One possibility is that the standard simply does not apply in such instances. Alternatively, the *Marquez* standard may apply, subject to a modified first factor that pertains to the unique nature of one-on-one identifications. Cf. *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (modifying prejudice prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for ineffective assistance of counsel claims resulting from guilty pleas). A third possibility is that instances of exigency altogether are distinguishable from the analytical framework set forth in *Marquez*, requiring an independent analysis in accordance with *Ledbetter*, *Wooten* and other related precedent. In any event, even if we were to apply the *Marquez* standard, our outcome would remain the same in the present case, as our review of the entire identification procedure in light of the factual circumstances of the case convinces us that the identification procedure was not unnecessarily suggestive. See *State* v. *Marquez*, supra, 291 Conn. 146.

*Austin,* supra, 244 Conn. 248. Finally, the officers instructed Guerra prior to her identification of the defendant that "[t]he person you will view may or may not be the person involved in this incident."[4]

In light of the foregoing, the court determined that the one-on-one identification was not impermissibly suggestive due to the exigencies of the situation. On our careful review of the record, we agree. The court did not abuse its discretion in denying the motion to suppress.

II

The defendant also argues that the evidence adduced at trial was insufficient to sustain his conviction. His claim is wholly dependent on his contention that the testimony of Guerra should have been suppressed.

In her testimony, which it would serve no useful purpose to recount in detail, Guerra described her encounter with the defendant at her apartment on the morning of July 2, 2007. The jury, as sole arbiter of credibility, was free to believe that testimony. See *State v. Russell,* 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). Guerra's testimony constituted evidence sufficient to establish burglary in the first degree and unlawful restraint. In light of our determination that the court properly denied the defendant's motion to suppress, his claim of evidential insufficiency fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Although the defendant quarrels with the court's finding that the officers informed Guerra that "the individual that she was about to identify may or may not be the suspect" prior to her one-on-one identification, that finding is supported by the suppression hearing testimony of Crea and Guerra and, thus, is not clearly erroneous. That finding, which also was supported by the evidence adduced at trial, obviated the need for a *Ledbetter* instruction to mitigate the potential risk of mistaken identification. See *State v. Ledbetter,* supra, 275 Conn. 578–80.