******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RICHARD DAKERS
(AC 34556)

Alvord, Keller and Schaller, Js.

*Argued October 14, 2014—officially released January 20, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Schuman, J.)

*Stephen B. Rasile*, assigned counsel, for the appellant (defendant).

*Stephen C. Haas*, certified legal intern, with whom were *Bruce R. Lockwood*, senior assistant state's attorney, and, on the brief, *Gail P. Hardy*, state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Richard Dakers, appeals from the judgment of conviction, rendered following a jury trial, of larceny in the third degree in violation of General Statutes § 53a-124 (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a. On appeal the defendant claims that the trial court improperly denied his motion to suppress the one-on-one showup identification, which was based on the grounds that the identification was unnecessarily suggestive and unreliable. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the summer of 2010, Guy Dowdell traveled from his home in North Carolina to visit his brother in Hartford. On the night of July 3, 2010, Dowdell attended a party and then drove with a female friend to the Crown Chicken restaurant in Hartford at approximately 5 a.m. Dowdell remained in the vehicle alone in the Crown Chicken restaurant parking lot while his friend ordered food inside. As Dowdell sat in the vehicle, a man approached the car, opened the door, and told him to "get the F out of the car . . . ." After Dowdell exited the vehicle, the man pointed a gun at him and asked for money, and when Dowdell stated that he didn't have any, the man demanded his cell phone. After Dowdell handed over his cell phone, the man got into Dowdell's car and drove away.

Dowdell then entered the restaurant and called the police. Officer Kurt Elbe of the Hartford Police Department responded to the scene and took an initial statement and description of the suspect and the stolen vehicle. Elbe transmitted the descriptions, which included the license plate number of the vehicle, over the police radio, with a request for officers to be on the lookout.

Detective Anthony Pia began to canvass the area where the suspect, later identified as the defendant, was believed to be. Pia located a vehicle that matched the description of the stolen vehicle and had a license plate number consistent with what was reported. As Pia began to pursue the vehicle, the defendant drove away at a high rate of speed. Pia then radioed for additional officers to assist in the pursuit. As other officers joined, Pia witnessed the defendant pointing what appeared to be a weapon at a police cruiser and trying to run other police vehicles off the road. The pursuit continued onto numerous streets in Hartford until the defendant lost control of the vehicle and crashed into a telephone pole, causing serious damage to the vehicle. Following the crash, the defendant left the vehicle and ran toward adjacent railroad tracks. Officer Cory Clark, accompanied by Officer Steve Barone, began a foot pursuit of the defendant. After the police encountered

the defendant, he surrendered and was apprehended.

Shortly thereafter, based upon Dowdell's descriptions, another officer notified Elbe that the police believed that they had the suspect in custody. As a result of receiving this information, Elbe left Dowdell to respond to the scene where the suspect was located, and he requested that an officer be dispatched to further assist Dowdell.

Officer Kamil Stachowicz was dispatched to Dowdell's location. Stachowicz notified Dowdell that the police had apprehended a possible suspect. Dowdell agreed to participate in an identification procedure to determine if it was the person who he claimed stole the car from him. Stachowicz drove Dowdell to the scene of the accident where the defendant was located. At the scene, Stachowicz told Dowdell that the person that the officers have "may or may not be the individual who carjacked you," and asked Dowdell again to give a brief description of the man who stole the car. Stachowicz also reviewed with Dowdell a form that the police use to explain showup identifications.[1] Dowdell signed the form. Stachowicz then walked Dowdell over to the defendant, who was facing them. After the defendant turned to the left and to the right as instructed, Dowdell positively identified the defendant as the man who he claimed stole the car. Dowdell stated that he recognized the defendant because, "he was looking in my face, pointing a gun at me [at the time of the theft]."

The state charged the defendant with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the third degree in violation of § 53a-124 (a) (1), and interfering with a police officer in violation of § 53a-167a. Prior to trial, the defendant moved to suppress any pretrial or in-court identifications of the defendant, claiming inter alia, that the procedures were unnecessarily suggestive. Following a suppression hearing, the trial court denied the defendant's motion. The court reasoned, "the police did tell the witness that the person that he saw may or may not be present. I realize that's perhaps obvious in a one person showup, it's a question of whether he was or was not there, but at least the police affirmatively stated that and from the testimony they did nothing to suggest that this person was, in fact, the perpetrator of the crime; they left it to the victim to decide. So while I do agree that the use of the one person showup is suggestive, I do not believe that it was unnecessarily so."

Following the trial, the jury found the defendant not guilty of robbery in the first degree, but guilty of larceny in the third degree and interfering with a police officer. The court sentenced the defendant to a total effective term of six years imprisonment, execution suspended after three and one-half years, and three years of probation. This appeal followed.

We begin by setting forth the standard of review. In *State* v. *Ledbetter*, 275 Conn. 534, 547–548, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006), our Supreme Court determined that, "[b]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect." (Footnote omitted; internal quotation marks omitted.)

Because the identification analysis involves factual determinations by the trial court, we consider also the standard of review for evidentiary issues. Our standard of review of evidentiary matters is clear. "[W]e will reverse the trial court's ruling [on evidence] only where there is an abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Internal quotation marks omitted.) Id., 548.

The sole issue on appeal is whether the court erred when it denied the defendant's motion to suppress his one-on-one showup identification on the grounds he presented, namely, that the identification was unnecessarily suggestive and was unreliable based on the totality of the circumstances. We conclude that the identification was not unnecessarily suggestive.[2]

In accordance with the aforementioned principles, we begin our analysis by inquiring whether the identification procedure was unnecessarily suggestive. "[A] claim of an unnecessarily suggestive pretrial identification procedure is a mixed question of law and fact." (Internal quotation marks omitted.) *State* v. *Foote*, 122 Conn. App. 258, 262–63, 998 A.2d 240, 243, cert. denied, 298 Conn 913, 4 A.3d 834 (2010). "[A]n identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." (Internal quotation marks omitted.) *State* v. *Ledbetter*, supra, 275 Conn. 548. "[G]enerally a

one-to-one confrontation between a [witness] and the suspect presented to him for identification is inherently and significantly suggestive because it conveys the message to the [witness] that the police believe the suspect is guilty." (Internal quotation marks omitted.) *State* v. *Tatum*, 219 Conn. 721, 727, 595 A.2d 322 (1991). Our Supreme Court has determined, however, that a one-on-one showup identification is not impermissibly suggestive if exigent circumstances exist. See *State* v. *Wooten*, 227 Conn. 677, 686, 631 A.2d 271 (1993).

When determining whether exigent circumstances exist, our Supreme Court has "considered such factors as whether the defendant was in custody, the availability of the victim, the practicality of alternate procedures and the need of police to determine quickly if they are on the wrong trail." (Internal quotation marks omitted.) *State* v. *Ledbetter*, supra, 275 Conn. 549. Our Supreme Court also has contemplated whether the one-on-one showup identification procedure provided the victim with an opportunity to identify his assailant while his memory of the incident was still fresh. See *State* v. *Wooten*, supra, 227 Conn. 686; *State* v. *Middleton*, 170 Conn. 601, 608, 368 A.2d 66 (1976) ("prompt on-the-scene confrontations tend under some circumstances to ensure accuracy"). Furthermore, "[a]n immediate viewing of the suspect may be justified where it [is] important for the police to separate the prime suspect gold from the suspicious glitter, so as to enable them . . . to continue their investigation with a minimum delay.' " (Internal quotation marks omitted.) *State* v. *Wooten*, supra, 686–87.

The defendant claims that his one-on-one showup identification was unnecessarily suggestive for several reasons: Dowdell was told he was going to view a "suspect," rather than just a person; Dowdell saw that the car was destroyed and was forced to contemplate how he would explain the destruction to the car's owner; and the defendant was surrounded by police and handcuffed at the time the identification occurred.

We begin our analysis of the one-on-one showup identification by focusing on the point at which following the theft of the car, Dowdell was informed by Stachowicz that he would be transported to the scene of the accident where the defendant was located. At that time, Stachowicz stated, "we're going to take you to your vehicle and we're going to show you somebody, and if this is the person that took the vehicle, let us know and point him out." In support of this, the court found that "[f]urther reducing the suggestiveness somewhat . . . the police did tell [Dowdell] that the person may or may not be present." The court went on to conclude that, "from the testimony [the police] did nothing to suggest that this person was, in fact, the perpetrator of the crime; they left it to the victim to decide."

The police officer then drove Dowdell to the scene

but, prior to viewing the accident or defendant, Dowdell reviewed a preidentification form commonly used by the Hartford Police Department. Next, Dowdell was escorted by the police through a grassy area to the place where the defendant was standing, handcuffed. Dowdell testified that he immediately recognized and affirmatively identified the defendant as the man who had stolen the car from him earlier. The court concluded, "at that point this showup was necessary or at least helpful, both from the victim's standpoint to determine quickly whether the suspect was the person who was likely [the individual who] had committed the crime or at least in the victim's eyes, and for the suspect's own benefit, because if the victim had not identified the defendant, then presumably the police would have let him go free, and so the quick showup was necessary and at least helpful from both the standpoint of the victim and the suspect."

We determine that although this scenario has an element of suggestiveness, it is not unnecessarily so. We are guided by *State* v. *Wooten*, supra, 227 Conn. 686. In that case, our Supreme Court determined that an identification where the defendant was in the back of a police car was not unnecessarily suggestive. Id. We see no reason to determine that the presence of police in the present case, even with the defendant in handcuffs, is any more suggestive than the facts in *Wooten*. We also are unpersuaded by the defendant's argument, without more, that Dowdell's viewing the destroyed car prompted him to misidentify the defendant. Moreover, we note that the officer instructed Dowdell prior to his identification of the defendant, that the person they were going to see at the scene of the accident may or may not be the individual who had robbed him. We agree with the court that the police discussed the prospective identification with Dowdell with an eye toward impartiality and left it to Dowdell to identify whether the individual in custody was the man who had committed the crime earlier that night.

Finally, as case law suggests, one-on-one showup identifications are inherently suggestive; but the question before us is whether, based upon the specific facts, the showup identification was unnecessarily suggestive. See *State* v. *Tatum*, supra, 219 Conn. 727. We conclude that the one-on-one showup identification utilized in the present case was suggestive but not unnecessarily so, because it was supported by exigent circumstances. See *State* v. *Amarillo*, 198 Conn. 285, 293, 503 A.2d 146 (1986). Given Dowdell's report of an assailant who allegedly robbed him at gunpoint, and then fled in Dowdell's vehicle and attempted to run police officers off the road during a high speed chase, we are persuaded that the facts of the case present a quintessential example of exigent circumstances that justified a one-on-one showup identification without delay. See *State* v. *Foote*, supra, 122 Conn. App. 269–70.

On the basis of the foregoing, we conclude that the court did not abuse its discretion in denying the defendant's motion to suppress the one-on-one showup identification.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Hartford Police Department's "Witness Instructions for Show Up Identification" form used at the scene contains five statements instructing the witness that he will be asked to view an individual or individuals, that the individuals may not look the same as they did at the time of the incident, that the person whom the witness saw may not be present, that the investigation will continue regardless of whether the witness identifies anyone, and that it is as important to clear innocent people as it is to identify the guilty. Dowdell initialed the statements, gave a brief description of the person who he claimed stole the car, and signed the form.

[2] We conclude that the identification was not unnecessarily suggestive and, therefore, do not reach the second prong of this inquiry.